IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

REBECCA A. VEST,

          Plaintiff,

v.                                              CIVIL ACTION NO.   2:15-cv-05886

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

          Defendant.

**MEMORANDUM OPINION AND ORDER**

      Pending before the Court is Plaintiff Rebecca Ann Vest's Complaint seeking review of the final decision of the Acting Commissioner of Social Security (the "Commissioner").  (ECF No. 1.)  On May 11, 2015, this action was referred to United States Magistrate Judge Cheryl A. Eifert for submission of proposed findings and a recommendation.  (ECF No. 3.)  Magistrate Judge Eifert filed her PF&R, (ECF No. 12), on January 8, 2016, recommending that this Court deny Plaintiff's request for judgment on the pleadings, (ECF No. 7), grant the Commissioner's request for judgment on the pleadings, (ECF No. 9), affirm the final decision of the Commissioner, and dismiss this matter from the Court's docket.  Plaintiff timely filed objections to the PF&R on January 15, 2016 (the "Objections"), (ECF No. 13), and the Commissioner filed a response to the Objections on January 21, 2016, (ECF No. 14).

      For the reasons that follow, the Court **OVERRULES** the Objections, (ECF No. 13), **ADOPTS** the PF&R, (ECF No. 12), to the extent it is consistent with this Memorandum Opinion

1

and Order, **DENIES** Plaintiff's request for judgment on the pleadings, (ECF No. 7), **GRANTS** the Commissioner's request for judgment on the pleadings, (ECF No. 9), **AFFIRMS** the final decision of the Commissioner, and **DISMISSES** this action.

### I. Procedural Background

The facts concerning this matter are fully set forth in the PF&R and need not be repeated here at length. In short, Plaintiff filed an application for disability and disability insurance benefits on April 30, 2012, alleging disability as of April 23, 2012. (ECF No. 6–5 at 5). The application was initially denied on June 27, 2012, (ECF No. 6–4 at 2–6), and upon reconsideration on October 23, 2012, (*id*. at 10–12). A hearing was held before Administrative Law Judge Stanley Petraschuk (the "ALJ") on November 7, 2013. (ECF No. 6–2 at 27–52.) On January 27, 2014, the ALJ issued an unfavorable decision.[1] (*Id*. at 10–23.) The Appeals Council denied review of the ALJ's decision on March 10, 2015. (*Id*. at 2–7.) Thereafter, on May 7, 2015, Plaintiff filed her Complaint in this Court. (ECF No. 1.)

### II. Standard of Review

**A.    Review of the PF&R**

---

[1] The ALJ found at step one of the "sequential evaluation" process that Plaintiff "has not engaged in substantial gainful activity since April 23, 2012, the alleged onset date." (ECF No. 6–2 at 15.) At step two, the ALJ found that Plaintiff has the following severe impairments: generalized osteoarthritis and obesity. (*Id*.) At step three of the analysis, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (*Id*. at 16.) The ALJ next found that Plaintiff "has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)," reduced by certain listed limitations. (*Id*. at 17–20.) The ALJ also found that Plaintiff "is unable to perform any past relevant work." (*Id*. at 20–21.) Finally, after finding that Plaintiff was an individual closely approaching advanced age on the alleged onset date, the she has at least a high school education and is able to communicate in English, and that she would not be classified as disabled under the Medical-Vocational Rules whether or not she had transferable job skills, the ALJ found at step five that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id*. at 21–22.)

The Court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However, the Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendations to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). In addition, the Court need not conduct a de novo review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

B.    Review of the ALJ's Findings and Decision

"Under the Social Security Act, [a reviewing court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (alteration in original) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) ("A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law."). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). "[I]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Mastro*, 270 F.3d at 176 (alteration in original) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). "In reviewing for substantial evidence, [the court should] not undertake to re-weigh conflicting evidence, make credibility determinations, or

3

substitute [its] judgment for that of the Secretary." *Craig*, 76 F.3d at 589 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)). If "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the Court must defer to the Commissioner's decision. *Id*. (citing *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)).

A plaintiff "bears the burden of proving that he is disabled within the meaning of the Social Security Act." *English v. Shalala*, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981)). "The term 'disability' means . . . inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Commissioner uses a five-step "sequential evaluation" process to evaluate a disability claim.[2] *See* 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If a decision regarding disability can be made at any step of the process, however, the inquiry ceases. *See* 20 C.F.R. § 404.1520(a).

---

[2] In *Hall v. Harris*, the Fourth Circuit provided the following description of the "sequential evaluation" analysis:

> Under the process the ALJ must determine in sequence: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether that impairment meets or equals the medical criteria of Appendix 1 which warrants a finding of disability without considering vocational factors; and (4) if not, whether the impairment prevents him from performing his past relevant work. By satisfying either step 3 or 4, the claimant establishes a prima facie case of disability. The burden then shifts to the Secretary and leads to the fifth and final inquiry in the sequence: whether the claimant is able to perform other work considering both his remaining physical and mental capacities (defined as residual functional capacity) and his vocational capabilities (age, education, and past work experience) to adjust to a new job.

658 F.2d at 264–65; *see also* 20 C.F.R. § 404.1520 (setting forth the "sequential evaluation" analysis).

### III.   *Discussion*

Plaintiff raises two legal objections to the findings and recommendations in Magistrate Judge Eifert's PF&R.   Plaintiff's first objection is that the Magistrate Judge erred in finding that the ALJ complied with the relevant regulations in evaluating the medical opinion of Rakesh Wahi, M.D., a state agency consultative examiner.  (ECF No. 13 at 2–6.)  Plaintiff's second objection is that the Magistrate Judge erred in finding that the ALJ properly evaluated Vest's credibility.  (*Id*. at 6–7.)  For the reasons discussed below, the Court **OVERRULES** Plaintiff's Objections to the PF&R.

**A.   Examining Source Opinion**

As noted above, Plaintiff objects to the ALJ's evaluation of the medical opinion offered by Dr. Wahi, a state consultative examiner.  Following a comprehensive examination, Dr. Wahi opined that Plaintiff "would be able to function part-time in a light setting."  (ECF No. 6–8 at 5.)  Plaintiff argues that the ALJ did not comply with the applicable regulation when it evaluated that opinion and determined to give its part-time limitation no weight.

In making its disability determination, the Social Security Administration "will always consider the medical opinions in [a claimant's] case record together with the rest of the relevant evidence [it receives]."  20 C.F.R. § 404.1527(b).  "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [her] symptoms, diagnosis and prognosis, what [she] can still do despite impairment(s), and [her] physical or mental restrictions."  *Id*. § 404.1527(a)(2).  "The regulations suggest a hierarchy of medical opinions, with opinions by treating physicians generally being afforded the greatest weight, followed by examining sources,

5

and finally, nonexamining sources." *Bevans v. Colvin*, Civil Action No. 3:13–12502, 2014 WL 4925431, at *3 (S.D. W. Va. Sept. 30, 2014). Treating source opinions are generally accorded more weight, including controlling weight when certain conditions are met, and an ALJ must always give "good reasons" for the weight ultimately assigned to a treating source's opinion. 20 C.F.R. § 404.1527(c).

Whether or not controlling weight is assigned to a treating source opinion, however, the Commissioner must evaluate every medical opinion it receives, regardless of source, in accordance with the following factors: (1) whether the source has examined the claimant and the length and frequency of the examinations; (2) the nature and extent of any treatment relationship; (3) the extent to which the source's opinion is supported by the medical evidence in the record; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is rendered by a specialist in his or her area of specialty; and (6) any other relevant factors. *Id*. "Although an ALJ must consider these factors when weighing the evidence, he is under no mandate to conduct a factor-by-factor analysis." *Jones v. Comm'r of Soc. Sec.*, Civil Action No. 1:10CV185, 2012 WL 1085658, at *12 (N.D. W. Va. Mar. 30, 2012) (citing *Pinson v. McMahon*, Civil Action No. 3:07-1056-PMD-JRM, 2009 WL 763553, at *10 (D.S.C. Mar. 19, 2009)); *see also Hardy v. Colvin*, Civil Action No. 2:13–cv–20749, 2014 WL 4929464, at *2 (S.D. W. Va. Sept. 30, 2014) ("[T]he regulations require the ALJ to consider the six factors, but do not demand that the ALJ explicitly discuss each of the factors.").

"[W]hile an ALJ may not reject medical evidence for no reason or for the wrong reason, an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the [relevant factors], if he sufficiently explains his rationale and if the

record supports his findings." *Wireman v. Barnhart*, Civil Action No. 2:05cv00046, 2006 WL 2565245, at *8 (W. D. Va. Sept. 5, 2006) (citing *King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980)). Importantly, "there is no regulatory directive that the Commissioner always give good reasons for the weight given to an examining source like there is with a treating source." *Starcher v. Colvin*, Civil Action No. 1:12–01444, 2013 WL 5504494, at *6 (S.D. W. Va. Oct. 2, 2013) (citing 20 C.F.R. § 404.1527(c)(1)–(2)). Nonetheless, although an ALJ's duty of explanation is lesser with respect to the opinions of a non-treating source than with respect to those of a treating physician, his explanation must "be sufficiently clear so that a court may meaningfully review [the ALJ's] weighing of the opinion." *Miller v. Colvin*, No. 2:13–cv–31251, 2015 WL 917772, at *18 (S.D. W. Va. Mar. 3, 2015) (citations omitted); *see also Bryant ex rel. Bryant v. Barnhart*, 63 F. App'x 90, 95 (4th Cir. 2003) ("[T]he ALJ must explain the weight accorded to non-treating sources."). "An ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up specious inconsistencies, or has not given good reason for the weight afforded a particular opinion." *Koonce v. Apfel*, 166 F.3d 1209, at *2 (4th Cir. 1999) (internal quotation marks and citations omitted).

In this case, the ALJ was very clear about his reasons for giving Dr. Wahi's opinion no weight: he found that the opinion was "inconsistent with [Dr. Wahi's] clinical examination findings as well as the claimant's robust and varied activities of daily living." (ECF No. 6–2 at 20.) As the regulations make explicit, whether a medical opinion is supported by relevant evidence and consistent with the record as a whole are factors central to the ultimate determination of how much weight to give that opinion. Moreover, elsewhere in his analysis, the ALJ provided

7

a detailed summary of the evidence in the record underlying his conclusion and demonstrating the lack of support for and internal inconsistencies within Dr. Wahi's opinion.

The ALJ detailed Dr. Wahi's medical findings, and in particular his reports that Plaintiff described her health as "fair," reported taking no medications, could walk on her heels and toes and squat, demonstrated "fine manipulation intact, and normal sensation and reflexes," and exhibited a normal range of motion of the hips, knees, ankles, shoulders, elbows, wrists, and cervical and lumbar spine. (*Id*. at 15–16.) The ALJ also noted Plaintiff's reports of pain in her knees, ankles, shoulders, and wrists. (*Id*.) Although Dr. Wahi ultimately determined that, based on Plaintiff's reports of "significant pain on movement of most of her joints," she "is unable to do sustained physical activity because of these limitations," (ECF No. 6–8 at 5), the ALJ found that conclusion inconsistent with Dr. Wahi's objective medical findings, which documented a relatively normal physical condition and noted that Plaintiff "is able to carry out her activities of day-to-day living without any limitations." (*Id*. at 2.) Given this discrepancy between Dr. Wahi's clinical findings and his ultimate recommendation, the ALJ concluded that the doctor "relied quite heavily on the subjective report of symptoms and limitations provided by the claimant." (ECF No. 6–2 at 20.)

However, as the ALJ went on to discuss, these subjective reports of symptoms and limitations conflicted with Plaintiff's own descriptions of her ability to function. The ALJ documented Plaintiff's self-reported abilities, including the capacity to walk a city block, stand on and off for two hours, alternate between sitting and standing, push and pull, reach overheard, handle and pick up things, and climb stairs, if slowly and only occasionally. (ECF No. 6–2 at 19). The ALJ further noted that in line with these abilities, Plaintiff reported engaging in a wide variety

8

of daily activities, including shopping, attending church, performing household chores, doing yard work, preparing meals, riding an ATV, and feeding her goats and chickens. (*Id*.) Finally, the ALJ noted that Plaintiff's testimony and demeanor at the hearing, which the ALJ described as "very energetic," corroborated that she was able to engage in "all activities of daily living" and did not support a finding of disability. (*Id*.) Given these reports and the lack of medical evidence in support of a physical limitation to the extent described in Dr. Wahi's opinion, the ALJ found substantial persuasive evidence to contradict Dr. Wahi's conclusion that Plaintiff could only function part time in a light work setting. This explanation demonstrates that the ALJ complied with the relevant regulations and provides an adequate basis, supported by substantial evidence in the record, for rejecting Dr. Wahi's opinion. *See Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (upholding ALJ's rejection of medical opinion that was inconsistent with the doctor's own treatment notes and based solely upon the claimant's subjective reports of pain, and noting that "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight"); *Jones v. Astrue*, 585 F. App'x 275, 276 (4th Cir. 2014) (finding that ALJ appropriately gave a medical opinion less weight when it was inconsistent with the claimant's daily activities and behavior at the disability hearing); *Woodard v. Colvin*, 1:14CV882, 2016 WL 1595387, at *4 (M.D.N.C. Apr. 20, 2016) ("Where a plaintiff's statements regarding her daily activities, medical treatment evidence, or other opinion evidence contradict a medical opinion, the ALJ may afford the opinion less weight."), *report and recommendation adopted*, 1:14CV882, 2016 WL 3512211 (M.D.N.C. June 22, 2016).

As Plaintiff's assignment of error is that the ALJ improperly evaluated Dr. Wahi's opinion, such a finding is sufficient to resolve the issue in the Commissioner's favor.[3] Accordingly, Plaintiff first objection is **OVERRULED**.[4]

---

[3] Despite the fact that Plaintiff's actual objection is to the ALJ's evaluation of Dr. Wahi's opinion, her argument focuses almost entirely on the Magistrate Judge's analysis of the medical opinion of Dr. Snyder, Plaintiff's treating physician. Although Plaintiff attempts to argue that Dr. Snyder's opinion was actually consistent with Dr. Wahi's opinion, she recognizes that the ALJ did not explicitly compare Dr. Wahi's opinion to Dr. Snyder's and "certainly" did not state any inconsistency in the doctors' opinions "as a reason for the weight [the ALJ] assigned to Dr. Wahi's opinion." (ECF No. 13 at 3.) Given this concession, it is not clear why Plaintiff devotes so much energy to her argument that "the Magistrate Judge's interpretation of Dr. Snyder's opinion is not based on substantial evidence." (*Id.*) Plaintiff's argument as it relates to Dr. Snyder is a red herring.

This Court's task in this context is not to determine whether the Magistrate Judge's findings are supported by substantial evidence. Rather, it is to determine, on de novo review when objection is made to specific errors in those findings, whether the findings of the ALJ are supported by substantial evidence. Here, the particular issue presented for review is whether the ALJ's assessment of Dr. Wahi's opinion was in accordance with the relevant regulations and supported by substantial evidence. As discussed above, the Court concludes that it was. Plaintiff has not challenged the ALJ's evaluation of Dr. Snyder's opinion, only the Magistrate Judge's. However, to the extent Plaintiff attempts to argue that Dr. Snyder's opinion provides substantial evidence in support of Dr. Wahi's part-time limitation opinion, such an interpretation directly contradicts the ALJ's assessment of Dr. Snyder's opinion. Specifically, the ALJ assigned "great weight" to Dr. Snyder's decision to limit Plaintiff to light work with certain restrictions, largely including those restrictions in his RFC and emphasizing that "the restrictions indicated by the claimant's treating physician are consistent, perhaps even less restrictive, with those determined in this decision." (ECF No. 6–2 at 20.) The ALJ clearly did not interpret Dr. Snyder's opinion to impose any continuing part-time limitation, and there is simply no basis in his opinion to draw the conclusion, urged by the Plaintiff, that Dr. Wahi's part-time limitation opinion "was supported by Dr. Snyder's opinions and treatment notes." (ECF No. 13 at 5.) Thus, the ALJ has already weighed the evidence and accorded Dr. Snyder's opinion an interpretation that differs from that proffered by Plaintiff. As Plaintiff does not actually challenge the ALJ's weighing of Dr. Snyder's opinion, the Court does not find reason to accept her indirect invitation to revisit it or otherwise plumb Dr. Snyder's handwritten and difficult-to-decipher treatment notes to assign them a contradictory interpretation that the Magistrate Judge rightly described as "pure conjecture." (ECF No. 12 at 17.)

To the extent that Plaintiff argues the Magistrate Judge's discussion of Dr. Snyder's opinion was an impermissible "*post hoc*" justification, she provides no supporting authority for this argument, which is ostensibly a reference to the well-established principle of administrative law that "an agency's discretionary order [may] be upheld, if at all, on the same basis articulated in the order by the agency itself." *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168–69 (1962). Here, Plaintiff recognizes that the ALJ did not actually discuss Dr. Snyder's opinion as a basis for rejecting Dr. Wahi's, and as the Court has already discussed, the ALJ's evaluation of Dr. Wahi's opinion was adequate for the reasons stated by the ALJ. To now argue that the Magistrate Judge's discussion was a "*post hoc*" justification, when it was only provided as a response to Plaintiff's own argument is puzzling at best. In any case, the Court finds no error in the ALJ's challenged findings, so there would be no independent basis to overturn the agency decision even if the Magistrate Judge somehow did engage in impermissible "*post hoc*" reasoning.

[4] Plaintiff also objects to the Magistrate Judge's analysis of the ALJ's treatment of medical opinions by two non-examining state agency medical consultants, Dr. Sarpolis and Dr. Reddy. Again, however, Plaintiff has not independently challenged the ALJ's treatment of those medical opinions, only his treatment of Dr. Wahi's opinion. Here, the ALJ gave "substantial weight" to the opinions of the state medical experts, both of whom concluded that Plaintiff was capable of light work subject to certain restrictions and limitations. (ECF No. 6–2 at 20.) Plaintiff argued before the Magistrate Judge that these opinions were unreliable because they did not take into account the full range of medical evidence available to the Commissioner, and in particular did not consider radiological evidence suggesting mild degenerative changes to Plaintiff's feet and moderate degenerative changes to her knees. (ECF No.

10

## B.     Pain and Credibility[5]  Evaluation

---

6–8 at 11, 18.)  To the extent the presence of these medical records somehow reinforces the opinion of Dr. Wahi, there is no indication that Dr. Wahi considered them.  To the extent Plaintiff cites them to undermine the ALJ's reliance on the opinions of the state medical experts, the Court notes that the Plaintiff has not challenged the ALJ's assessment of those medical opinions, and in any case agrees with the Magistrate Judge that "[t]here is no evidence in the record justifying [Plaintiff's] presumption that the x-rays constituted 'key' evidence, let alone key evidence that undermined or conflicted with the opinions of Dr. Sarpolis and Dr. Reddy."  (ECF No. 12 at 20.)  Plaintiff objects to the Magistrate Judge's conclusion, arguing that the radiological evidence is in fact material because it corroborates Plaintiff's subjective statements about her symptoms.  (ECF No. 13 at 5.)  However, whether the ALJ properly assessed Plaintiff's statements about her symptoms is a different question from whether he properly weighed the medical opinion evidence. The former determination is made by the ALJ based on "all of the available evidence, including . . . the medical opinions of [the claimant's] treating source and other medical opinions as explained in § 404.1527."  20 C.F.R. § 404.1529(c)(1).  Whether objective medical evidence such as an x-ray might support an ALJ's assessment of a claimant's subjective symptoms is not directly relevant to the inquiry of whether the ALJ gave proper weight to a medical opinion that did not rely on such objective evidence.  Here, the ALJ did in fact consider the January 2012 x-ray showing mild to moderate degenerative changes, and ultimately concluded that the objective evidence did not "support the limitations to the degree [Plaintiff] alleged."  (ECF No. 6–2 at 18.)  Thus, the mere fact that the radiological evidence is a relevant consideration to an ALJ's credibility analysis does nothing to undermine the Magistrate Judge's well-reasoned conclusion that the radiological evidence would not have altered the conclusions of Dr. Sarpolis or Dr. Reddy, and that the ALJ's reliance on those opinions was justified.

[5]  The Court notes that in March 2016, the Social Security Administration issued Social Security Ruling 16–3P, a new policy guidance regarding how the SSA evaluates "statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims."  Soc. Sec. Admin., SSR 16–3P, *Titles II and XVI: Evaluation of Symptoms in Disability Claims*, 2016 WL 1119029 (Mar. 16, 2016).  SSR 16–3P "supersedes SSR 96–7p," the guidance on this topic that had been in place since 1996, and "eliminate[es] the use of the term 'credibility' from [the SSA's] sub-regulatory policy, as [its] regulations do not use this term."  SSR 16–3P, 2016 WL 119029, at *1.  In so doing, the SSA clarified that "subjective symptom evaluation is not an examination of an individual's character."  *Id*.

This ruling was issued after the PF&R in this case was entered and the objections period had expired, and long after the ALJ's consideration of Plaintiff's claim, so both the ALJ's opinion and the PF&R speak in terms of a "credibility" evaluation at this step.  In general, however, the change is mostly semantic, a clarification of existing law rather than a substantive change. As one court addressing SSR 16–3P has noted, "comparison of the old ruling [and] the new interpretation ruling reveals substantial consistency, both in the two-step process to be followed and in the factors to be considered in determining the intensity and persistence of a party's symptoms."  *Lockwood v. Colvin*, No. 15 C 192, 2016 WL 2622325, at *3 n.1 (N.D. Ill. May 9, 2016).  As of yet, however, there exists no binding authority addressing whether the ruling should apply retroactively to SSA decisions that were rendered before the ruling was issued.  *See, e.g.*, *Burnstad v. Colvin*, Case No. 6:15-cv-00921-SI, 2016 WL 4134535, at 11 n.9 (D. Or. Aug. 2, 2016) (documenting differential treatment among district courts about whether SSR 16–3P should apply retroactively); *Dooley v. Comm'r of Soc. Sec.*, ---F. App'x---, 2016 WL 4046777, at *5 n.1 (6th Cir. 2016) (noting that because SSR 16–3P did not alter the existing rule at issue in the case before the court, the court "need not reach the issue" of whether SSR 16–3P applies retroactively).  Here, the Court determines that the ALJ's analysis of Plaintiff's subjective symptoms, even if it speaks in terms of "credibility" as described in SSR 96–7p, employs the correct process and evaluates the correct factors under either ruling, and so makes no finding as to SSR 16–3P's retroactive application.  *See Burnstad*, 2016 WL 4134535, at *11 n.9 ("Because the ALJ's findings in regard to this issue pass muster irrespective of which standard governs, the Court need not resolve [the issue of SSR 16–3P's retroactive application].").  Because the record in this case and much of the existing case law refers to this analysis as a "credibility evaluation," however, the Court will occasionally refer to the ALJ's analysis in those terms.

11

Plaintiff's second objection is to the ALJ's pain and credibility analysis. She argues that the ALJ "did not provide a factually accurate summary of [her] testimony and failed to consider [her] statements regarding her inability to sustain full-time employment." (ECF No. 13 at 6.)

The relevant regulations prescribe a two-step process for the evaluation of a claimant's reports of pain or other symptoms. *See* 20 C.F.R. § 404.1529; *Tanner v. Comm'r of Soc. Sec.*, 602 F. App'x 95, 99 (4th Cir. 2015) ("This Circuit has developed, in accordance with SSA regulations, a two-step process for evaluating a claimant's subjective complaints of pain."). The first step assesses whether objective medical evidence in the record demonstrates the existence of a medical impairment "which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(b). This step requires a "threshold" showing that a claimant has a medical condition that could produce "the pain the claimant alleges she suffers." *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996). At this stage, "the pain claimed is not directly at issue," *id.*, and a claimant need only show objective medical evidence of "some condition that could reasonably be expected to produce the pain alleged, not objective evidence of the pain itself." *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990).

If this showing is made, the second step requires the ALJ to evaluate the intensity and persistence of the symptoms, as alleged by the claimant, to determine the extent to which those symptoms "affect [the claimant's] capacity to perform basic work activities." 20 C.F.R. § 404.1529(c)(4). It is not necessary that the claimed severity be proved by objective medical evidence. *See Mickles v. Shalala*, 29 F.3d 918, 919 (4th Cir. 1994). Once the first level showing is established, "the claimant's allegations as to the severity and persistence of her pain may not be dismissed merely because objective evidence of the pain itself . . . [is] not present to corroborate

the existence of pain." *Craig*, 76 F.3d at 595. At the same time, however, a claimant's subjective complaints of symptoms "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers." *Hines v. Barnhart*, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (quoting *Craig*, 76 F.3d at 595).

In weighing a claimant's statements about the limiting effects of her symptoms, the ALJ is to consider all relevant evidence, including medical signs and laboratory findings, 20 C.F.R. § 404.1529(a), as well as the opinions of treating and non-treating medical sources, *id*. § 404.1529(c)(1), objective medical evidence, *id*. § 404.1529(c)(2), and other factors "relevant to [a claimant's] symptoms" such as daily activities, location, duration, frequency, and intensity of pain and other symptoms, and measures taken (such as medication, treatment, or home remedies) to alleviate those symptoms, *id*. § 404.1529(c)(3). Ultimately, in determining the extent to which pain and other symptoms limit a claimant's ability to perform basic work activities, the SSA considers the claimant's "statements about the intensity, persistence, and limiting effects of [her] symptoms," and evaluates those statements "in relation to the objective medical evidence and other evidence." *Id*. § 404.1529(c)(4). When making this determination, the ALJ's decision "should refer specifically to the evidence informing the ALJ's conclusion." *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985).

Because an ALJ has the opportunity to "observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). "[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to

13

substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Thus, so long as the ALJ "points to substantial evidence in support of his decision and adequately explains the reasons for his finding on the claimant's credibility, the court must uphold the ALJ's determination." *Seabolt v. Barnhart*, 481 F. Supp. 2d 538, 548 n.2 (D.S.C. 2007) (citing *Mastro*, 270 F.3d at 176).

In this case, the ALJ set forth the applicable standards for consideration of a claimant's symptoms and dutifully applied the two-step process described above. In doing so, he considered a wide variety of factors, including Plaintiff's own reports of pain and limitations, the objective medical evidence in the record, Plaintiff's medical treatment history, Plaintiff's own reports, both written and through her in-person testimony at the disability hearing, of daily activities, and the medical opinion evidence submitted by her treating physician, a state agency consultative examiner, and two non-examining state agency consultants.

As for work-related limitations, the ALJ noted that Plaintiff had to leave her job at the United States Postal Service because she was unable to do the lifting, bending, and repetitive work required of the job position and that even before she quit she mostly worked part-time and required the use of a rug and sandals while working. (ECF No. 6–2 at 18.) Further, he documented Plaintiff's testimony as to the severity and intensity of her symptoms, noting that she had osteoarthritis in multiple joints in her body, intense pain in her feet when walking, pain in her knees when getting up and down, shoulder pain when doing household chores such as scrubbing and cleaning windows, and wrist pain, resulting from both osteoarthritis and carpal tunnel, that resulted in difficult lifting and opening jars. (*Id.*) Thus, the ALJ took note of Plaintiff's testimony suggesting severe symptoms and inability to work at the post office and, on the basis of

her testimony, concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (*Id.*)

The ALJ went on to conclude, however, that Plaintiff's statements concerning the intensity, persistence and limiting effect of these symptoms could not be fully credited in light of the other evidence in the record, in particular the objective medical evidence and Plaintiff's own reports of daily activities. The ALJ specifically referenced medical records, including an x-ray from January 2012 that Plaintiff elsewhere argues was "key" to making out her case for disability, (ECF No. 13 at 5), demonstrating at most moderate degenerative joint changes and mild carpal tunnel syndrome. (ECF No. 6–2 at 18.) Her treatment records support the relatively moderate nature of her impairments, reflecting "routine and/or conservative" treatment and a lack of any "narcotic based pain medication in spite of allegations of disabling levels of pain." (*Id.* at 18–19.) As the ALJ noted, such treatment history does not comport with Plaintiff's allegations of total disability. *See Stitely v. Colvin*, 621 F. App'x 148, 150–51 (4th Cir. 2015) (finding that it was proper for the ALJ, when assessing a claimant's subjective complaints, to note that the claimant's impairments "were treated with limited, conservative treatment"); *Wall v. Astrue*, 561 F.3d 1048, 1068–69 (10th Cir. 2009) (noting that a history of conservative medical treatment undermines allegations of disabling symptoms); *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988) (noting that relevant factors in assessing a claimant's pain testimony include "the levels of medication and their effectiveness," "the extensiveness of the attempts (medical or nonmedical) to obtain relief," and "the frequency of medical contacts").

Finally, the ALJ documented Plaintiff's daily activities, largely catalogued above and demonstrating Plaintiff's ability to engage in a wide variety of life's activities notwithstanding the

15

presence of her severe osteoarthritis. The ALJ concluded that these activities were "not limited to the extent one would expect, given the complaints of disabling symptoms and limitations," and that "[o]verall, the evidence of record supports a finding that the claimant can function in a competitive work environment, factoring in the functional limitations provided in the residual functional capacity to accommodate her severe impairments." (ECF No. 6–2 at 19.)

The ALJ's analysis fully engages with the evidence in the record, which paints a picture of a claimant who has osteoarthritis and suffers serious pain as a result, but who ultimately can function enough to carry out many daily activities and perform work activities when proper accommodations are made for her limitations. Nonetheless, Plaintiff argues that the ALJ omitted certain portions of Plaintiff's testimony regarding her ability to work and attempts to maintain employment, and mischaracterized other statements about her ability to engage in daily activities. (ECF No. 7 at 11.) As an initial matter, the Court notes that an ALJ is not required to discuss every piece of evidence, but only evidence which, "if believed, could lead to a finding of disability." *Naylor v. Astrue*, 693 F. Supp. 2d 544, 568 (S.D. W. Va. 2010); *see also Brewer v. Astrue*, No. 7:07–CV–24–FL, 2008 WL 4682185, at *3 (E.D.N.C. Oct. 21, 2008) ("While the ALJ must evaluate all of the evidence in the case record, the ALJ is not required to comment in the decision on every piece of evidence in the record, and the ALJ's failure to discuss a specific piece of evidence is not an indication that the evidence was not considered.").

Here, Plaintiff's contention that the ALJ "mischaracterized some and completely omitted other statements made by Vest regarding her daily activities," (ECF No. 13 at 6), simply does not find support in the record. Plaintiff does not specifically reference any particular piece of evidence, but provides citations to the pages of the record containing allegedly omitted evidence.

Much of the cited testimony is from Plaintiff's hearing transcript and relates to Plaintiff's inability to work at the post office, her joint pain, and her difficulty functioning around the house. (*See* ECF No. 6–2 at 36–41). However, as noted above, the ALJ discussed all of this evidence in his step-one credibility analysis. Plaintiff does point to her consistent history of work from 1991 to her alleged onset date, which the ALJ did not mention, but fails to show how consideration of that history would have made any difference in the ALJ's analysis, especially given that the ALJ gave express consideration to the pain and functional limitations Plaintiff alleged were caused by the onset of that disability.

Similarly, Plaintiff's argument that the ALJ "mischaracterized" certain of her statements, is (1) not supported by the record and (2) insufficient to establish that the ALJ's analysis was factually inaccurate or otherwise undermine his assessment of Plaintiff's symptoms. Plaintiff takes issue with the ALJ's reference to Plaintiff's ability to ride ATVs and walk, when in fact the ATV was only used for transportation when Plaintiff was unable to walk and that Plaintiff could only "take short-slow walks" in light of her joint pain. Even taking Plaintiff's statements as true, it was not inaccurate for the ALJ to note that Plaintiff was "able" to ride on an ATV and "walk[ ] daily," (ECF No. 6–2 at 19); Plaintiff did report to being able to do these things, even if at a reduced capacity following the onset of her alleged disability. (*See* ECF No. 6–6 at 31–32.) In any case the ALJ mentioned these activities within a long list of daily activities—including the ability to push and pull, reach overhead, handle, pick up things, bend with assistance, stoop, touch her knees, shower and dress herself, drive, ride in a car, prepare meals, shop, attend church, perform household chores, do yard work, manage household finances, wash dishes, do laundry, vacuum, and walk to her barn to feed goats and chickens—with which Plaintiff takes no issue. Thus, even

if the ALJ's mention of Plaintiff's walking and ATV riding activities was not entirely accurate, his ultimate conclusion that Plaintiff's reports of disability were inconsistent with her reports of daily activities is still supported by substantial evidence.

Ultimately, the ALJ chose not to credit Plaintiff's symptom reports to the extent they suggested a finding of total disability because such a finding was not supported by the objective medical evidence of record and was inconsistent with Plaintiff's own reports, both written and through her in-person testimony at the disability hearing, of being able to carry out a diverse array of life activities. The record reflects that the ALJ conducted a careful review of the evidence of record and made clear his reasons for discrediting those of Plaintiff's statements that suggested total disability. His ultimate conclusion is supported by substantial evidence in the record. Accordingly, Plaintiff's second objection is **OVERRULED**.

## IV.    *Conclusion*

For the reasons discussed herein, the Court **OVERRULES** the Objections, (ECF No. 13), **ADOPTS** the PF&R, (ECF No. 12), to the extent it is consistent with this Memorandum Opinion and Order, **DENIES** Plaintiff's request for judgment on the pleadings, (ECF No. 7), **GRANTS** the Commissioner's request for judgment on the pleadings, (ECF No. 9), **AFFIRMS** the final decision of the Commissioner, **DISMISSES** this case, and **DIRECTS** the Clerk to remove this action from the Court's docket.

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

        ENTER:       September 22, 2016

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE